J-S53014-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| WILLIAM KUDER, | |
| Appellant | No. 379 EDA 2017 |

Appeal from the PCRA Order Entered December 27, 2016
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0006864-2010

BEFORE:  BENDER, P.J.E., OLSON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                **FILED OCTOBER 30, 2017**

Appellant, William Kuder, appeals from the post-conviction court's December 27, 2016 order denying his timely-filed petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  After careful review, we affirm.

The PCRA court set forth a detailed summary of the facts and procedural history of Appellant's case, which we need not reproduce herein.  *See* PCRA Court Opinion (PCO), 3/24/17, at 1-4.  We only note that in June of 2002, Appellant sexually assaulted K.P., a 12-year-old male.  K.P. did not tell anyone about the abuse until eight years later.  During the investigation of K.P.'s allegations, an order was obtained from a Court of Common Pleas judge that permitted K.P. to wear a recording device inside Appellant's home.  During the

intercepted conversation between Appellant and K.P., Appellant made incriminating statements regarding the assaults.

Prior to Appellant's trial, he filed a motion to suppress the recording of his conversation with K.P. Following a suppression hearing, the trial court denied that motion and Appellant's case proceeded to a jury trial in June of 2011. At the close thereof, Appellant was convicted by a jury of attempted involuntary deviate sexual intercourse (complainant less than 16 years of age), 18 Pa.C.S. § 3123(a)(7); two counts of indecent assault (complainant less than 16 years of age), 18 Pa.C.S. § 3126(a)(8); and two counts of indecent exposure, 18 Pa.C.S. § 3127(a). On September 16, 2011, Appellant was sentenced to an aggregate term of 3 to 10 years' incarceration. He filed a timely notice of appeal, and after this Court affirmed his judgment of sentence in a published opinion, our Supreme Court denied his subsequent petition for allowance of appeal. *Commonwealth v. Kuder* ("*Kuder I*"), 62 A.3d 1038 (Pa. Super. 2013), *appeal denied*, 114 A.3d 416 (Pa. 2015).

On December 18, 2015, Appellant filed a *pro se* PCRA petition. Counsel subsequently entered her appearance on Appellant's behalf and filed an amended petition. Appellant's claims all involved assertions of trial/appellate counsel ineffectiveness. Following an evidentiary hearing, the PCRA issued an order on December 27, 2016, denying Appellant's petition. Appellant filed a timely appeal, and he also timely complied with the PCRA court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The PCRA court filed a responsive opinion on March 24, 2017.

Herein, Appellant presents five issues for our review:

I. Did the PCRA court err in finding that trial counsel did not violate Appellant's Sixth Amendment right under the U.S. Constitution and Article 1 § 9 of the Pennsylvania Constitution to effective assistance of counsel when he failed to present available statements at the pretrial suppression hearing rebutting the [Commonwealth's] claim that there was probable cause for the Wiretap intercept because a 'close and ongoing relationship' between Appellant and the victim still existed?

II. Did the PCRA court err in finding that Appellant's constitutional rights under the Sixth and Fourteenth Amendments of the U.S. Constitution and Article 1 § 9 of the Pennsylvania Constitution were not violated when appeals counsel ineffectively abandoned the claim that Judge Bateman lacked lawful written authority from the President Judge to issue the one-party consent wiretap intercept Order?

III. Did the PCRA court err in finding trial counsel was not ineffective under the Sixth Amendment of the U.S. Constitution and Article 1 § 9 of the Pennsylvania Constitution for failing to argue that there were additional procedural errors which violated the Wiretap Act and should have resulted in … suppression?

IV. Did the PCRA court err in finding that trial counsel was not ineffective under the Sixth Amendment of the U.S. Constitution and Article 1 § 9 of the Pennsylvania Constitution for opening the door to prejudicial cross-examination by the prosecutor of character witnesses Black and Lockard?

V. Did the PCRA court err in finding that Appellant's constitutional rights were not violated by the cumulative prejudicial effect that counsel's ineffective assistance … caused?

Appellant's Brief at 3.

"This Court's standard of review from the grant or denial of post-conviction relief is limited to examining whether the lower court's determination is supported by the evidence of record and whether it is free of legal error." **Commonwealth v. Morales**, 701 A.2d 516, 520 (Pa. 1997)

(citing ***Commonwealth v. Travaglia***, 661 A.2d 352, 356 n.4 (Pa. 1995)).

Where, as here, a petitioner claims that he received ineffective assistance of

counsel, our Supreme Court has directed that the following standards apply:

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). "Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." [***Commonwealth v.***] ***Colavita***, 606 Pa. [1,] 21, 993 A.2d [874,] 886 [(Pa. 2010)] (citing ***Strickland***[ ***v. Washington***, 104 S.Ct. 2053 (1984)]). In Pennsylvania, we have refined the ***Strickland*** performance and prejudice test into a three-part inquiry. ***See*** [***Commonwealth v.***] ***Pierce***, [515 Pa. 153, 527 A.2d 973 (Pa. 1987)]. Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. ***Commonwealth v. Ali***, 608 Pa. 71, 86, 10 A.3d 282, 291 (2010). "If a petitioner fails to prove any of these prongs, his claim fails." ***Commonwealth v. Simpson***, [620] Pa. [60, 73], 66 A.3d 253, 260 (2013) (citation omitted). Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. ***See Ali, supra***. Where matters of strategy and tactics are concerned, "[a] finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." ***Colavita***, 606 Pa. at 21, 993 A.2d at 887 (quotation and quotation marks omitted). To demonstrate prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." ***Commonwealth v. King***, 618 Pa. 405, 57 A.3d 607, 613 (2012) (quotation, quotation marks, and citation omitted). "'[A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the

proceeding.'" ***Ali***, 608 Pa. at 86–87, 10 A.3d at 291 (quoting ***Commonwealth v. Collins***, 598 Pa. 397, 957 A.2d 237, 244 (2008) (citing ***Strickland***, 466 U.S. at 694, 104 S.Ct. 2052)).

***Commonwealth v. Spotz***, 84 A.3d 294, 311-12 (Pa. 2014).

In Appellant's first issue, he argues that his trial counsel acted ineffectively by not presenting, at the suppression hearing, evidence to demonstrate that he and K.P. did not have a 'close and ongoing relationship' at the time that K.P. wore a recording device into Appellant's home and intercepted their conversation. Specifically, Appellant claims that his attorney should have called Appellant's "wife, K.P., K.P.'s mother, father, and/or brother to testify at the suppression hearing…." Appellant's Brief at 21. According to Appellant, the testimony of these witnesses would have established "that the last contact between Appellant and K.P. and his family was in 2002 and that it ended on a bad note." ***Id.*** Appellant maintains that such evidence would have demonstrated that the order permitting the wiretap intercept inside Appellant's home was not supported by probable cause.

We assessed in ***Kuder I*** "whether sufficient probable cause was offered to support the interception" inside Appellant's home. The ***Kuder I*** panel began by summarizing the pertinent law regarding the Wiretap Act, 18 Pa.C.S. §§ 5701-5782, as follows:

> Generally, the Wiretap Act prohibits the interception, disclosure, or use of any wire, electronic, or oral communication. 18 Pa.C.S. § 5703. The Act places great emphasis on the protection of privacy interests inherent in one's communications. ***See generally Commonwealth v. De Marco***, 396 Pa. Super. 357, 578 A.2d 942, 949 (1990). Relevant to the instant case, the Act provides as follows:

**§ 5704. Exceptions to prohibition of interception and disclosure of communications.**

It shall not be unlawful and no prior court approval shall be required under this chapter for:

* * *

(2) Any investigative or law enforcement officer or any person acting at the direction or request of an investigative or law enforcement officer to intercept a wire, electronic or oral communication involving suspected criminal activities, including, but not limited to, the crimes enumerated in section 5708 (relating to order authorizing interception of wire, electronic or oral communications), where:

* * *

(ii) one of the parties to the communication has given prior consent to such interception. However, no interception under this paragraph shall be made unless the Attorney General or deputy attorney general designated in writing by the Attorney General, or the district attorney, or an assistant district attorney designated in writing by the district attorney, of the county wherein the interception is to be made, has reviewed the facts and is satisfied that the consent is voluntary and has given prior approval for the interception; however, such interception shall be subject to the recording and record keeping requirements of section 5714(a) (relating to recording of intercepted communications) and that the Attorney General, deputy attorney general, district attorney, or assistant district attorney authorizing the interception shall be the custodian of recorded evidence obtained therefrom;

* * *

(iv) the requirements of this subparagraph are met. If an oral interception otherwise authorized under this paragraph will take place in the home of a nonconsenting party, then, in addition to the requirements of subparagraph (ii), the interception shall not be conducted until an order is first obtained from the president judge, or his designee who also

> shall be a judge, of a court of common pleas, authorizing such in-home interception, based upon an affidavit by an investigative or law enforcement officer that establishes probable cause for the issuance of such an order. No such order or affidavit shall be required where probable cause and exigent circumstances exist. For the purposes of this paragraph, an oral interception shall be deemed to take place in the home of a nonconsenting party only if both the consenting and nonconsenting parties are physically present in the home at the time of the interception.

18 Pa.C.S. § 5704.

***Kuder I***, 62 A.3d at 1044-45.

Specifically regarding the probable cause requirement for a wiretap order, the ***Kuder I*** panel stated the following:

> Section 5710 of the Act authorizes a judge, upon application, to enter an order permitting the interception of a communication when there is probable cause to believe that six conditions exist. 18 Pa.C.S. § 5710(a)(1–6). One such condition is that probable cause exists to believe that "particular communications concerning [an offense described in section 5708] may be obtained through such interception." 18 Pa.C.S. § 5710(a)(2). Although Appellant does not specifically cite this section, his argument centers on the alleged lack of probable cause to believe that Appellant would discuss any past criminal activity, if approached by K.P., especially because the conversation would occur eight years after the crimes were alleged to have occurred. Brief for Appellant at 15–16 ("There were simply no facts or circumstances, set out in the Affidavit of Probable Cause herein ... from which it could reasonably be concluded that there was probable cause to believe that sending [K.P], unannounced and 8 years later, to [Appellant's] house would result in a conversation about 'suspected criminal activity.'").

> Both Appellant and the Commonwealth cite ***Commonwealth v. McMillan***, 13 A.3d 521 (Pa. Super. 2011). Appellant attempts to distinguish the case, while the Commonwealth argues that it controls the instant matter.

- 7 -

In **McMillan**, the appellant challenged the trial court's refusal to suppress evidence obtained pursuant to the Wiretap Act. The evidence was used to convict the appellant of various sex-related crimes. The appellant was a high school choir director who engaged in an inappropriate sexual relationship with the victim, a fourteen-year-old girl. **Id.** at 522. The abuse commenced in 2004, and ended in 2006 when rumors began to spread about the illicit relationship. **Id.** at 523. After being repeatedly pressured by her aunt, the victim eventually admitted to the relationship. In May 2008, after facially complying with all of the Act's application requirements, law enforcement officers obtained approval to intercept a phone conversation between the appellant and the victim, who consented to the interception. We described the phone conversation as follows:

> After [the victim] indicated she was upset about the rumors circulating about their sexual encounters, she asked [the appellant] if he had told anyone about them. [The appellant] repeatedly denied telling anyone, but empathized with [the victim's] feelings, especially since people were discussing the situation four years later. When asked if he had sex with any other students, [the appellant] answered in the negative. [The appellant] asked [the victim] to keep him updated on the situation. **Id.**

We rejected the appellant's argument that law enforcement lacked reasonable grounds[4] to establish that he would discuss "suspected criminal activities." The appellant argued that, because the relationship had ended in 2006, it was unreasonable to believe that he would discuss such remote criminal conduct nearly two years later in a telephone conversation. We rejected that argument based upon detectives' belief that the appellant would talk about the incident because of his mentor-type relationship with the victim. We found it especially important that there was no evidence suggesting that any negative feelings existed between the appellant and the victim that would prevent the appellant from talking to her. **Id.** at 525–26.

[4] In **McMillan**, we repeatedly referred to "reasonable grounds", instead of probable cause. The previous version of 18 Pa.C.S. § 5721.1, which authorizes an aggrieved party to seek suppression of improperly intercepted evidence, did not contain the term "probable cause." This section was amended in 1998, and incorporated the term "probable cause" to serve as the governing standard for challenging

- 8 -

an interception under the Act. Our cases arising prior to the amendment held that the standard was "reasonable grounds." *See Commonwealth v. Phillips*, 373 Pa. Super. 193, 540 A.2d 933, 937 (2008). For all practical purposes, the terms are interchangeable, as is evidenced by our decision in *McMillan*, which was published approximately 13 years after the amendments.[1]

Contrary to Appellant's assertions in the instant case, we assigned no particular significance in *McMillan* to the time that had elapsed between the end of the sexual relationship and the time when the interception actually occurred. Rather, the controlling factor in *McMillan* was the nature of the connection between the appellant and the victim, which was akin to a mentor-mentee and teacher-pupil relationship. For this reason, we agree with the Commonwealth that *McMillan* controls the outcome of the instant case.

There is no doubt that Appellant and K.P. had a mentor-mentee relationship, much like the relationship we found controlling in *McMillan*. Additionally, the affidavit attached to the Commonwealth's application for a court order authorizing the interception in this case stated that Appellant was a long-time friend of K.P.'s parents. The affidavit further included a description of how the relationship between Appellant and K.P. stemmed from a mutual interest in computers, which eventually turned the relationship into a teacher-pupil type connection. Unfortunately, it was during the computer sessions that the sexual incidents occurred. Finally, as in *McMillan*, *no evidence existed to suggest that Appellant harbored any negative feelings toward K.P. that would have caused Appellant to wish not to discuss any particular matters with K.P.* While it is true that Appellant became extremely angry with K.P. between the incidents, it is clear that the anger was related to K.P.'s refusal to return to Appellant's home after the first sexual assault. Despite his trepidations, K.P. returned to the home a second time and was sexually assaulted a second time. *There is no evidence of*

_____

[1] Herein, Appellant argues "that the [*Kuder I* panel] erred and violated Appellant's Fourth Amendment rights by finding pursuant to *McMillan* that the term 'reasonable grounds' is interchangeable with 'probable cause[.']" Appellant's Brief at 20 n.4. We decline to address Appellant's argument in support of this claim, as this panel cannot overturn the *Kuder I* panel's decision in this regard.

- 9 -

> *record that Appellant's anger persisted once K.P. relented to Appellant's desire for him to return, or that any other negative feelings persisted after the second assault that would lead the issuing authority to believe that Appellant would refuse to speak with K.P.*
>
> Viewing this information in a "common-sense, non-technical manner," *see Commonwealth v. Hoppert*, 39 A.3d 358, 362 (Pa. Super. 2012) (quotation and citation omitted), and drawing upon our decision in *McMillan*, we find that probable cause existed to believe that communications relevant to Appellant's sexual crimes would have been obtained through the interception. *See* 18 Pa.C.S. § 5710(a)(2). We are not convinced that the time period between the crimes and the interception, even though that gap was much longer here than in *McMillan*, compels a different conclusion. *Absent the close and ongoing relationship between Appellant and K.P. and K.P.'s family, the temporal aspect of Appellant's argument might be more persuasive. Nonetheless, that relationship did exist in this case and compels our probable cause determination.* Accordingly, the trial court did not err in denying Appellant's suppression motion.

*Kuder I*, 62 A.3d at 1046–48 (emphasis added).

Based on the above-emphasized language in *Kuder I*, Appellant now argues that, had his trial counsel presented evidence that his and K.P.'s relationship had soured prior to the intercept in 2010, probable cause would not have been found to support the wiretap order. For instance, Appellant claims that counsel should have presented evidence that K.P.'s mother and father told police that after K.P. went to Appellant's home several times, K.P. suddenly did not want to go back and their friendly relationship with Appellant's family "broke off…." Appellant's Brief at 22 (citation to the record omitted). Appellant also claims that counsel should have presented evidence that K.P.'s brother told police that "his mother stopped him from going over to [Appellant's house] after [Appellant] 'freaked' out on him when he was

- 10 -

power washing his dirt bike one day." ***Id.*** (citation to the record omitted). Additionally, Appellant maintains that his trial counsel should have presented evidence that Appellant's wife, Karen Kuder, told police that Appellant's and K.P.'s relationship had grown "distant … and continued to drift apart as their respective families grew." ***Id.*** Appellant maintains that these witnesses' statements to police, and/or similar testimony at the suppression hearing, would have demonstrated that there was no 'close and ongoing' relationship between Appellant and K.P. at the time of the wiretap interception in 2010 and, consequently, that there was no probable cause to justify that intercept.

Appellant's argument fails for several reasons. Initially, Appellant incorrectly asserts that the Wiretap Act requires a 'close and ongoing' relationship. Specifically, Appellant argues that "the wording of the statute … requires evidence of both a 'close' and an 'ongoing' relationship. Not one or the other. Both." Appellant's Brief at 24 (emphasis in original). Curiously, Appellant fails to cite to any provision of the Wiretap Act that purportedly contains the probable cause requirement of a 'close and ongoing' relationship. Our review of the statute confirms that no such mandate exists. Rather, the 'close and ongoing' relationship language was first utilized in ***McMillan***, and later reiterated in ***Kuder I***, as a factor ***supporting*** probable cause, not an element required to establish it. Thus, we are unconvinced by Appellant's argument that, had trial counsel refuted that factor alone, the suppression court would have necessarily found there was no probable cause to support the intercept order.

Moreover, we are also unpersuaded by Appellant's argument that the above-discussed evidence would have convinced the **Kuder I** panel that no 'close and ongoing' relationship existed between Appellant and K.P. at the time of the intercept. As the PCRA court points out, Appellant himself testified at trial that he

> "had told [K.P.] many years ago that if [K.P.] ever needed to talk to somebody that [K.P.] was **always welcome at [Appellant's] house and [Appellant] would always be a sympathetic ear.**" N.T. 6/2/2011 pp. 142-43. [Appellant] continued, "I would not let [K.P.] down if he had come to me for help." **Id.** at 144.

PCO at 8 (emphasis added). Appellant offered this testimony to "explain away that he 'confessed' to the sexual assault in an attempt to help K.P. work through 'problems' K.P. so personally and privately confided in [Appellant] years prior." **Id.** The PCRA court concluded that Appellant's trial testimony was "in direct contrast" to his argument that no "close and ongoing" relationship existed between himself and K.P. when the interception occurred in 2010.

Appellant now argues that "[t]he PCRA [c]ourt's reliance on what Appellant testified to [at trial] is in error." Appellant's Brief at 26 n.7. According to Appellant, it was "inappropriate for the PCRA [c]ourt to use [his] trial testimony to justify a ruling made before that testimony had even been given." **Id.** However, Appellant ignores that, at the time of our decision in **Kuder I**, we were permitted to "consider the evidence presented both at the suppression hearing **and at trial**" when reviewing a trial court's ruling on a

- 12 -

suppression motion.[2]  ***Kuder I***, 62 A.3d at 1045-46 (emphasis added) (citations omitted).  Appellant's trial testimony demonstrated that, at least in his mind, he and K.P. had a 'close and ongoing' relationship, which included an open invitation to K.P. to come to Appellant's house to talk with him about personal issues.  This testimony contradicts the statements by Appellant's wife, and K.P.'s mother, father, and brother, and was sufficient to establish that Appellant believed there was a 'close and ongoing' relationship between him and K.P. in 2010.  Thus, Appellant has failed to demonstrate that, had counsel presented evidence to refute his 'close and ongoing' relationship with K.P., that our holding in ***Kuder I*** would have changed.  Accordingly, Appellant's first ineffectiveness claim is meritless.

In regard to Appellant's second through fifth issues, we have reviewed the certified record, the briefs of the parties, and the applicable law.  We have also reviewed the thorough opinion of the Honorable Brian T. McGuffin of the Court of Common Pleas of Bucks County.  We conclude that Judge McGuffin's well-reasoned decision properly disposes of Appellant's remaining issues, and

_____

[2] We recognize that this scope of review changed eight months after ***Kuder I*** was decided, when our Supreme Court issued ***In re L.J.***, 79 A.3d 1073 (Pa. 2013), on October 30, 2013.  In that case, the Court held that an appellate court's scope of review from a suppression ruling is limited to the evidentiary record of the suppression hearing. ***Id.*** at 1087.  The ***In re L.J.*** Court explicitly declared that its holding was prospective only, meaning that the decision applied to the parties in ***In re L.J.*** "and all litigation commenced thereafter." ***Id.*** at 1089 n. 19.

we adopt that portion of his opinion as our own. **See** PCO at 9-18.[3] Therefore, we affirm the order denying Appellant's petition on that basis, as well as for the reasons set forth herein.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/30/2017

---

[3] We recognize, however, that in rejecting Appellant's second ineffectiveness claim, Judge McGuffin improperly relies, in part, on an unpublished memorandum decision by this Court. **See** PCO at 10-11. We do not adopt that aspect of Judge McGuffin's decision, as our Internal Operating Procedures prohibit any court from citing to, or relying on, an unpublished memorandum decision of this Court. **See** 210 Pa. Code § 65.37 ("An unpublished memorandum decision shall not be relied upon or cited by a Court or a party in any other action or proceeding….").

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA : No. CP-09-CR-006864-2010

v. : No. 379 EDA 2017

WILLIAM KUDER :

## OPINION

William Kuder appeals from this Court's Order dated December 27, 2016, denying his

Post-Conviction Relief Act ("PCRA") Petition, filed on April 28, 2016. Kuder filed this appeal on

January 23, 2017. The Court files this opinion in accordance with Pa.R.A.P. 1925(a).

On June 3, 2011, following a three day trial by jury, and after approximately one hour of

deliberation, Kuder was convicted of one (1) count of Attempted Involuntary Deviate Sexual

Intercourse with a Person under the age of 16, two (2) counts of Indecent Assault of a Person under

the age of 16, and two (2) counts of Indecent Exposure.

On September 16, 2011, Kuder was sentenced to a period of incarceration of not less than

three (3) to not more than ten (10) years in a state correctional facility.

The Superior Court's February 25, 2013, Opinion on direct appeal, offered a detailed

review of the record, revealing the following history:

Kuder had developed a close relationship with the twelve-year-old victim, K.P., and K.P.'s
family who lived on the same road as Kuder in Chalfont, PA. On a Monday afternoon in
June, 2002, K.P. went to Kuder's house to help him work on a computer. Kuder's wife and
toddler were also present in the home. K.P. and Kuder went downstairs into the basement
and began replacing the motherboard of a computer.

A few minutes passed, and without warning, Kuder lifter K.P. onto his lap and fondled
K.P.'s penis. Then, Kuder removed K.P.'s pants and started to masturbate K.P. while
assuring K.P. that this behavior was appropriate, as it would prepare K.P. for future
relationships with girls. K.P. attempted to free himself but was unable to. After a few
minutes, Kuder released K.P. and removed his own pants, asking K.P. to masturbate him.
K.P. briefly obliged, but then retreated to a corner of the basement and began playing a

computer game. Kuder then went over to K.P., and once again lifted K.P. onto his lap, removed his pants, and began masturbating K.P. This incident ended when Kuder's wife yelled down to K.P. that his mother called and he had to leave.

K.P. did not tell anyone what happened, and refused the next invitation to go back to Kuder's house. K.P. testified that this refusal angered Kuder, and Kuder said to him that if he were an adult, he'd beat him up for standing up to him. Scared, K.P. reluctantly returned to Kuder's house to once again work on a computer. Once they were in the basement, Kuder commented on the amount of pubic hair that K.P. had on his body. Kuder then pulled down K.P.'s pants, and asked if he could perform oral sex on K.P. Kuder got on his knees and tried to place his mouth on K.P.'s penis. K.P. testified that Kuder got approximately one eighth of an inch away from K.P.'s penis when K.P. successfully pulled away from Kuder. Kuder then removed his own pants and asked K.P. to perform oral sex on him. K.P. refused and retreated to another portion of the basement. Kuder followed, lifted K.P. onto his lap, removed K.P.'s pants, and once again began masturbating K.P. The encounter ceased when Kuder's wife once again yelled to K.P. from the top of the steps that K.P.'s mom wanted him to return home.

In June 2010, K.P. met with two detectives who requested K.P. wear a recording device in order to attempt to receive a recorded confession from Kuder. The interception took place on June 11, 2010, inside Kuder's residence at 64 Jasen Drive, Chalfont, Pennsylvania. Prior to the interception, detectives received consent from K.P. to place a recording device on his person. Detectives also obtained a court order granting them permission to intercept the conversation that would take place inside Kuder's residence pursuant to 18 Pa. C.S. §5704(2). The interception was a success, as detectives were able to record Kuder, for all practical purposes, confessing to the inappropriate sexual contact with twelve-year-old K.P. Kuder told K.P. that he had "clear and vivid memories" of the sexual assaults. Specifically, K.P. asked, and Kuder answered the following:

[K.P.]: I, I, I know you're, I know you're telling me the story but like just to put my mind at ease like right now. You remember specifically masturbating me prior to performing oral sex on me and exposing yourself, trying to get me to do that on you and we're the only two in the world that know about it, right? Or is the answer no to all that?

Kuder: I have very good memories of that.

Kuder said he was "mortified" that the assaults still haunt K.P. Kuder seemingly attempts to explain his behavior by asking K.P., "Is it pos, is it possible for an adult to fall in love with a

2

child?" Kuder states he is filled with "regret and remorse" for committing the assaults, and he repeatedly told K.P. that K.P. should "shoot" or "crucify" him. Kuder told K.P. that he did not "deserve to be alive." See Trial Ex. C6, C7.

Kuder was arrested on June 22, 2010. The Court Order granting law enforcement permission to conduct the interception was signed by the Honorable Wallace H. Bateman. Parties stipulated that Judge Bateman was orally designated by Bucks County President Judge, the Honorable Susan D. Scott, to issue orders pursuant to 18 Pa. C.S. §5701 ("The Wiretap Act"). It was further stipulated that the designation was not reduced to writing.

Kuder filed a pre-trial motion to suppress the recorded conversation obtained on June 11, 2010. A suppression hearing was held on March 28, 2011, before the Honorable Clyde W. Waite in the Bucks County Court of Common Pleas. Trial counsel moved to suppress on the basis that Judge Bateman's designation was a violation of The Wiretap Act since it was not procured in writing, and the affidavit supporting the court order lacked the requisite showing of probable cause, which included eight specific and unique points of consideration. Judge Waite denied and dismissed Petitioner's Motion to Suppress. Judge Waite also denied Kuder's request to certify the issue for interlocutory appeal.

On October 6, 2011, following Kuder's conviction and sentencing, Kuder filed an Appeal from the Judgement of Sentence to the Pennsylvania Superior Court. (2680 EDA 2011). On February 25, 2013, the Superior Court affirmed the disposition of the Trial Court, and denied Kuder's appeal.

On May 4, 2015, the Pennsylvania Supreme Court denied Kuder's petition for allowance of appeal.

3

On December 18, 2015, Kuder filed a pro se PCRA Petition. On January 21, 2016, current counsel entered her appearance. Kuder, through counsel, then filed an amended, counseled PCRA petition on April 28, 2016.

On May 26, 2016, the Commonwealth filed an Answer/Memorandum in Opposition to the Petition for Post-Conviction Collateral Relief.

By written Order dated December 27, 2016, we denied Kuder's Amended PCRA Petition as being without merit.

On January 23, 2017, Kuder filed this appeal.

## STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

On February 9, 2017, Kuder submitted Appellant's Concise Statement of Matters Complained of on Appeal, raising the following, verbatim and including any error, for review:

I.   The PCRA court erred in finding that trial counsel did not violate Petitioner's Sixth Amendment right under the U.S. Constitution and Article 1 §9 of the Pennsylvania Constitution to effective assistance of counsel when he failed to present available statements at the pretrial suppression hearing rebutting the Commonwealth's claim that there was probable cause for the Wiretap intercept because a 'close and ongoing relationship' between Petitioner and the victim still existed.

II.  Petitioner's constitutional rights under the Sixth and Fourteenth Amendments of the U.S. Constitution and Article 1 §9 of the Pennsylvania Constitution were violated when appeals counsel ineffectively abandoned the claim that Judge Bateman lacked lawful written authority from the President Judge to issue the one-party consent wiretap intercept Order.

III. Trial counsel was ineffective under the Sixth Amendment of the U.S. Constitution and Article 1 §9 of the Pennsylvania Constitution for failing to argue that there were additional procedural errors which violated the Wiretap Act and which should result in the suppression of the illegally obtained taped interception.

IV.  Trial counsel was ineffective under the Sixth Amendment of the U.S. Constitution and Article 1 §9 of the Pennsylvania Constitution for opening the door to prejudicial cross-examination by the prosecutor of character witnesses Black and Lockard.

4

V.	Petitioner's constitutional rights under the First, Fourth, Sixth and Fourteenth Amendments to the U.S. Constitution and Article 1 §9, were violated by the cumulative prejudicial effect that counsel's ineffective assistance of counsel caused.

## DISCUSSION

In an ineffective assistance of counsel claim, counsel is presumed effective. It is the Petitioner's burden to prove that counsel was ineffective. Commonwealth v. Colavita, 993 A.2d 874 (Pa. 2010).

To succeed on a PCRA Petition, Petitioner must prove, by a preponderance of the evidence, that his conviction and/or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of [his] particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa. C.S. §9543.

Petitioner must prove each element in the following three-prong test: (1) that his underlying claim is of arguable merit; (2) that counsel has no reasonable strategic basis for his action or inaction; and (3) that, but for the error and omission of counsel, there is a reasonable probability that the outcome of the proceeding would have been different. Commonwealth v. Kimball, 724 A.2d 326 (Pa. 1999); See also Commonwealth v. Pierce, 527 A.2d 973 (Pa. 1987).

In order to properly determine whether petitioner had been prejudiced by ineffective assistance of counsel, it is required to consider the overall trial strategy and view counsel's performance *in toto*. Commonwealth v. Saxton, 532 A.2d 352 (Pa. 1987). Counsel's decision to not take a particular action is not ineffective assistance as long as that decision is reasonably based, and not the result of sheer ignorance of available alternatives. Commonwealth v. Collins, 545 A.2d 822 (Pa. 1988).

5

I.       The PCRA Court did not Err in Finding that Trial Counsel did not Violate Petitioner's Sixth Amendment Right under the U.S. Constitution and Article 1 §9 of the Pennsylvania Constitution to Effective Assistance of Counsel for Strategically Choosing to not Present Evidence at the Pretrial Suppression Hearing Rebutting the Commonwealth's Claim that a "close and ongoing relationship" between Petitioner and K.P. still existed.

Kuder claims that trial counsel was ineffective by not presenting certain statements or evidence at the pre-trial suppression hearing challenging the probable cause affidavit for the "in-home" interception. Specifically, Kuder alleges that trial counsel should have presented evidence rebutting the notion that a "close and ongoing relationship" existed between Kuder and K.P. at the time of the interception. Kuder claims that without the existence of such a relationship there would not have been a legal or statutory basis for issuing the intercept Order. Kuder's claim is meritless. Furthermore, trial counsel was not ineffective for strategically choosing not to present this evidence.

In its February 25, 2013, Opinion on direct appeal, the Superior Court found probable cause existed to issue the Order based on the *past* "close and ongoing relationship" between Kuder and K.P, not the present date of intercept. Commonwealth v. Kuder, 62 A.3d 1038 (Pa. Super. 2013). This is further explained by the Superior Court's reliance in Commonwealth v. McMillian, 13 A.3d 521 (Pa. Super. 2011). In McMillan, the Superior Court found there was sufficient reason to believe the victim and defendant would discuss the sexual abuse during the intercept based on their prior, "close" mentor/student relationship, even though they hadn't spoken for over two years. Id. at 525. The Superior Court properly analogized McMillan with the instant facts, and determined there was reason to believe K.P. and Kuder would discuss the past sexual abuse based upon their *prior* "close and ongoing relationship". Therefore, any introduction of evidence at the suppression hearing supporting the notion that K.P and Kuder did

6

not have a *current* "close and ongoing relationship" is meritless and wholly irrelevant to the finding of probable cause to issue the Order.

Furthermore, Kuder's claim that without a "close and ongoing relationship", there would have been insufficient probable cause to issue the Order is without merit and has no legal support. Probable cause is not determined on any one factor. Commonwealth v. Gray, 503 A.2d 921 (Pa. Super. 1985). Rather, probable cause is based on the totality of the circumstances. Id. The affidavit established there was probable cause to believe a crime was committed. It also included that K.P. would raise the sexual abuse as the topic of discussion as soon as he entered Kuder's home. Therefore, there was clear and unequivocal reason to believe a conversation about the sexual abuse would take place.

Even if evidence rebutting a "close and ongoing relationship" between K.P. and Kuder at the time of the interception was somehow relevant to the finding of probable cause to issue the Order, trial counsel strategically decided not to introduce that evidence. In Kuder's Amended PCRA Petition, Kuder suggests that trial counsel was ineffective for failing to "present statements to police given by K.P., his mother, father, and brother which establish that there was no 'close and ongoing relationship' between K.P., his family, and the Petitioner in 2010." Amended PCRA Petition, p. 17. Trial counsel testified at the PCRA Hearing held on August 29, 2016. Trial counsel stated that he did not want to call K.P., or any of K.P.'s family members to the witness stand at the Suppression Hearing while representing the man who sexually abused their 12 year-old son or sibling. Specifically, trial counsel testified, "I was not putting on any member of that family who believed their son was violated by William Kuder." N.T. 8/29/2016 p. 53. When asked why he didn't call Kuder to testify at the Suppression Hearing "that he did flip out and that the relationship had broken off". Id. at 56. Trial counsel responded, "I

7

considered it, and I thought it would be stupid to do so, so I chose not to...I couldn't fathom how his answer would in any way further his cause or the argument that the recorded conversation should not come into evidence...in my opinion at the time, it would have absolutely confirmed and made stronger the Commonwealth's affidavit that this young man was in the home; that he was in the basement with Mr. Kuder; that Mr. Kuder did in fact have a computer business in the basement of the home. And I couldn't possibly understand how Mr. Kuder would explain that he flipped out. Either he would have denied flipping out, making the validity of Milligan's report come into question, or he would confirm he flipped out; and I don't understand why a grown man would flip out if a young boy's not coming to the house anymore, how that could help him in a case where he's accused of molesting the young boy." Id. at 56-57.

Therefore, Trial Counsel's decision not to introduce this wholly irrelevant evidence was a strategic decision. Trial counsel did not want to further damage his client's case by calling members of K.P.'s family to testify, or Kuder himself, which could have resulted in the confirmation of credible evidence for the Commonwealth's case in chief.

Furthermore, it is interesting to note that Kuder argues that there was insufficient probable cause by suggesting that there was no "close and ongoing" relationship with K.P. "at the time of the recording", yet at trial, Kuder testified to the exact opposite, attempting to explain away that he "confessed" to the sexual assault in an attempt to help K.P. work through "problems" K.P. so personally and privately confided in Kuder years prior. Specifically, Kuder testified, "I had told him many years ago that if he ever needed to talk to somebody that he was always welcome at our house and that I would always be a sympathetic ear." N.T. 6/2/2011 pp. 142-143. Kuder continued, "I would not let [K.P.] down if he had come to me for help." Id. at 144. This testimony is in direct contrast to the argument he has now conveniently proposed.

8

Kuder's claim fails to establish any single element of the three-part test for ineffective assistance of counsel. The underlying claim is meritless; counsel had a strategic purpose for not introducing the evidence; and there was no error, thus, no reasonable probability that the outcome of the proceeding would have been different.

II.    Petitioner's Constitutional Rights under the Sixth and Fourteenth Amendments of the U.S. Constitution and Article 1 §9 of the Pennsylvania Constitution were not Violated as any Claim that Judge Bateman Lacked Lawful Written Authority from the President Judge to Issue the One-Party Consent Wiretap Intercept Order is Meritless.

Kuder claims that written authorization from President Judge Scott designating Judge Bateman as her designee was required under Section 5704(2)(iv). Kuder argues that because Judge Scott orally designated Judge Bateman, the interception should have been suppressed. Therefore, Kuder now claims that appellate counsel was ineffective for not raising this claim on direct appeal. Kuder's claim is without merit.

Kuder supports his argument by relying upon Pa.C.S. §5712, which was repealed in 1998 and replaced with 18 Pa.C.S. §5721.1. This section of the Wiretap Act establishes the only grounds upon which recorded interceptions may be suppressed. 18 Pa. C.S. §5721.1(e). The only grounds for suppressing one-party consensual interceptions is evidence that "the consent to the interception was coerced by the Commonwealth," or that "the [in-home] interception was made without prior procurement of a court order or without probable cause." 18 Pa C.S. §5721.1(b)(5) & (6). There is absolutely no evidence on the record, nor does Kuder even allege in his Amended PCRA Petition, that the intercept was coerced. Similarly, there is no evidence that the intercept was procured without a court order. Lastly, the Superior Court already determined that probable cause existed to issue the order for the intercept. See Commonwealth v. Kuder, 62 A.3d 1038 (Pa. Super. 2013). Thus, even if written designation from the President Judge was required, violation of same would not result in suppression.

9

Kuder's claim that designation by the President Judge must be in writing was found by this PCRA Court, and appellate counsel, to be wholly without merit. Counsel cannot be ineffective where they fail to raise a meritless claim. Kuder relies on §5704(2)(ii), which specifically states that there must be a written designation of the designees of the Attorney General or District Attorney. Two paragraphs down, §5704(2)(iv), specifically states, "the interception shall not be conducted until an order is first obtained from the president judge, or his designee who shall also be a judge, of a court of common pleas..." 18 Pa C.S. §5704(2)(iv). It is evident to this Court that §5704(2)(ii) are requirements for the Attorney General or District Attorney, whereas §5704(2)(iv) are requirements for the Court. These are two separate and distinct sets of requirements. Language requiring written designation is only present with regards to the Attorney General or District attorney, where the legislature purposely excluded that requirement for the President Judge. The intent of a statue "may be discerned from the plain language of the words employed in the statue." Commonwealth v. Spence, 91 A.3d 44, 45 (Pa. 2014). We agree that the Suppression Court properly determined this claim lacked merit. Therefore, appellate counsel was not ineffective for failing to argue this meritless claim.

Additionally, in a recent non-precedential Superior Court Opinion, when offered the opportunity to require a written designation from the President Judge to their designee, the Superior Court declined to do so. See Commonwealth v. Guarrasi, No. 3514 EDA 2015, 2016 WL 6778181 (Pa. Super. Ct. Nov. 15, 2016). In Guarrasi, petitioner similarly challenged the intercepts obtained in his case under Sections 5704(2)(ii) & (iv). Id. Guarrasi argued, in part, that the intercept should be suppressed because there was no written designation by the President Judge. Id. The PCRA court denied Guarrasi's claim. Guarrasi appealed, and the Superior Court affirmed, stating, "for oral interceptions which occur in a non-consenting party's home...an

10

Order must first be obtained from the President Judge or his designee based upon an affidavit of probable cause prepared by a law enforcement officer." Id. at 56. The Superior Court specifically omitted any requirement that the designation be in writing. Id.

Furthermore, appellate counsel advised Kuder as to why he chose not to pursue this meritless claim. Attached to Kuder's Amended Petition was a letter from appellate counsel to Kuder, explaining how §5704(2)(iv) "does not require [the designation] to be in writing, unlike other subsections of the same Statute that do require similar designation be made in writing. Under the law of statutory construction, the Legislature is deemed to have purposefully omitted that requirement from this particular subsection." Amended PCRA Petition, Ex. P7. Appellate counsel concludes, "[i]t is my position that it would substantially undermine our legitimate issues to include issues which have no legal support." Id. See Commonwealth v. Laboy, 333 A.2d 868, 870 (Pa. 1975) ("If, in view of the reasonable alternatives, the appellate advocate had any rational basis for restricting the appeal to one or two issues chosen, then he has performed as an effective counsel and it matters not that he rejected other issues whether gathered from his own research or advanced by the client."); Commonwealth v. Showers, 782 A.2d 1010, 1016 (Pa. Super. 2001) ("Any evaluation of the effectiveness of appellate counsel must strike a balance between the duty to exercise professional judgment to limit the number issues presented and the duty not to fail to litigate a substantial matter of arguable merit that presents a reasonable probability that a different outcome would have occurred had it been raised by prior counsel.").

Therefore, Kuder has failed to meet any of the elements of the three prong test for ineffective assistance of counsel.

11

III.    Trial Counsel was not Ineffective under the Sixth Amendment of the U.S. Constitution and Article 1 §9 of the Pennsylvania Constitution as any Argument to Suggest Additional Procedural Errors Violated the Wiretap Act is Meritless.

Kuder claims that trial counsel was ineffective for failing to challenge that the in-home intercept was subject to suppression under 18 Pa.C.S. §5710(a)(1). Kuder argues that since the application and probable cause affidavit submitted to Judge Bateman named Indecent Assault and Corruption of Minors as the alleged offenses, the intercept should have been suppressed because those offenses were not specifically enumerated in 18 Pa.C.S. §5708 as required by 18 Pa.C.S. §5710(a)(1). However, we find this argument is without merit, as the proper statute to examine is 18 Pa.C.S. §5704.

Section 5710(a)(1) and the enumerated offenses listed in §5708 do not apply to this case as the intercept was a one-party consensual intercept. Section 5710(a)(1) applies to hard-wired, nonconsensual intercepts. Section 5704, entitled, "Exceptions to prohibition of interception and disclosure of communications", includes: "(2) Any investigative or law enforcement officer or any person acting at the direction or request of an investigative or law enforcement officer to intercept a wire, electronic or oral communication involving suspected criminal activities, including but not limited to, the crimes enumerated in section 5708". (emphasis added). Therefore, §5704 is very plainly an exception to §5710, when an "investigative or law enforcement officer, or any person acting at the direction of request of an investigative or law enforcement officer to intercept a wire" (one-party consensual intercept). Section 5704 specifically includes that the offenses are not limited to the crimes enumerated in §5708. See Commonwealth v. Phillips, 540 A.2d 933, 935 (Pa. 1988) ("§5704 contains its own authorization requirements, which are specific to §5704 and which supplant those found in §5708, et seq."). See Commonwealth v. Fetter, 770 A.2d 762 (Pa. Super. 2001) (a one-party consent interception

12

under §5704(2) is not subject to the stringent requirements for wiretaps under the Wiretap Act).

Kuder's reliance on §5710 is simply misplaced. Interestingly, if Kuder were correct in this claim, then no legal or statutorily purpose would exist for having §5704, considering §5710 would simply trump it. Section 5710 would make §5704 obsolete. It is clear to this Court that §5704 is an exception to §5710, as previously held by the Superior Court. See Commonwealth v. Fetter 770 A.2d 762 (Pa. Super. 2001). Therefore, trial counsel was not ineffective for failing to present this meritless claim.

Kuder's claim that the intercept was subject to the "necessity requirement" in 18 Pa.C.S. §5709(3) is similarly misplaced, and is without merit. Section 5709(3) requires a sworn statement by police that includes a "particular statement of facts showing that other normal investigative procedures with respect to the offense have been tried and have failed, or reasonably appear to be unlikely to succeed if tried or are too dangerous to employ." 18 Pa.C.S. 5709(3)(vii). Kuder claims that trial counsel was ineffective for failing to argue the interception based upon this statute.

However, the Superior Court has previously rejected this exact claim in connection with an intercept obtained under §5704(2).

> 18 Pa.C.S. §5704 is not subject to other sections of the Wiretap Act, unless specifically enumerated; instead, it lists exceptions to the generally stringent requirements for wiretaps when the interception occurs at the direction of a law enforcement officer and one party voluntarily consents to the interception. Therefore, it was unnecessary for the Commonwealth to establish that "normal investigative procedures with respect to the offense have been tried and failed, or reasonably appear to be unlikely to succeed if tried or are too dangerous to employ." 18 Pa.C.S. §§5709(3)(vii) and 5710(A)(3). The Commonwealth did not violate the Pennsylvania Constitution for using a wiretap, even in the appellant's home, as long as they established one-party consent and probable cause to the designated authorities.

Commonwealth. v. Fetter, 770 A.2d 762, 766–67 (Pa. Super. 2001).

Therefore, we denied Kuder's claim that trial counsel was ineffective for failing to raise this challenge, as counsel cannot be deemed ineffective where he fails to raise a meritless claim. Additionally, even if somehow §5709 did apply, the sexual abuse took place approximately eight years prior to the interception. There were no other reasonable investigative procedures law enforcement could have undertaken to acquire evidence, other than a confession. In all reasonably likelihood, over the course of the eight years, any and all physical evidence of the sexual abuse would have been destroyed.

IV. Trial Counsel was not Ineffective under the Sixth Amendment of the U.S. Constitution and Article 1 §9 of the Pennsylvania Constitution as Counsel did not open the door to Prejudicial Cross-Examination by the Prosecutor of Character Witnesses Mr. Black and Mr. Lockard.

Kuder claims that trial counsel was ineffective for "opening the door" to impermissible character evidence testimony from two character witnesses, David Black and Allen Lockard. However, Kuder's claim fails to meet the three prongs of the ineffective assistance of counsel test.

Kuder's claim was already raised and rejected by the Superior Court in their February 25, 2013, Opinion denying Kuder's direct appeal. Commonwealth v. Kuder, 62 A.3d 1038 (Pa. Super. 2013). Specifically, the Superior Court found there was no prejudice to Kuder based on the cross-examination of Mr. Black and Mr. Lockard.

> [E]ven if the interrogation went beyond the permissible scope of cross-examination, such an error undoubtedly would be harmless. Mr. Black and Mr. Lockard were two of twenty-two character witnesses called on [Kuder's] behalf. The jury was able to consider twenty other character witnesses, all of whom testified that [Kuder] had a reputation for being law-abiding. Thus, any imperfection in the cross-examination of two of these witnesses did not deny the jury the ability to consider evidence of [Kuder's] good character. Moreover, our detailed review of the trial record indicates that the evidence of [Kuder's] guilt submitted to the jury was overwhelming, and any erroneous ruling with regard to the cross examinations of Mr. Black and Mr. Lockard was *de minimis* and did not prejudice [Kuder]. Id. at 1058.

14

This Court agrees with the Superior Court's holding that any error was harmless, and thus not prejudicial to Kuder. We recognize that ineffective assistance of counsel claims are separate and distinct from direct appeal claims. However, a "claim may fail on the arguable merit or prejudice prong for the reasons discussed on direct appeal." Commonwealth v. Collins, 888 A.2d 564 (Pa. 2005). Therefore, Kuder has failed to meet the prejudice prong of the test for ineffective assistance of counsel, which appropriately dismisses his claim. See Commonwealth v. Rainey, 928 A.2d 215 (Pa. 2007) (where a claim fails to meet the prejudice prong, the claim can be dismissed on that basis alone without considering the other two prongs).

Additionally, Kuder's claim is without merit. With respect to Mr. Black, trial counsel asked the appropriate and proper question to elicit character evidence: "Of the people you know in your immediate neighborhood who also know Bill Kuder, Jr., what is his reputation for being a law abiding person?" N.T. 6/2/11 p. 199. Mr. Black then responded appropriately, "Extremely law-abiding." Mr. Black, on his own accord, then went on, in a non-responsive manner, to describe personal contacts with Kuder. Id. at 199-200. The Commonwealth objected to Mr. Black's testimony, but the Objection was overruled by the Trial Court and Mr. Black continued, nonresponsive, to describe personal contacts. Id.

During the subsequent cross-examination of Mr. Black, trial counsel objected as beyond the scope of direct, eliciting additional improper testimony, and speculative testimony. Id. at 205-207. The Trial Court overruled this objection, which permitted further improper testimony, even though the information was not elicited by Kuder's trial counsel.

Kuder also claims that trial counsel should have better prepared Mr. Black. However, this claim is also without merit considering that each of the twenty-three (23) character witnesses were asked the same appropriate question in eliciting reputation evidence, and only two provided

15

an improper, nonresponsive answer. Additionally, trial counsel testified that he prepped each of the character witnesses twice, and specifically told them they were not allowed to elicit personal opinion. N.T. 8/29/2016 p. 82. We believe there is simply no evidence to support that trial counsel did not properly prepare defense witnesses.

Mr. Lockard was similarly asked the proper question as to Kuder's reputation, and Mr. Lockard responded appropriately. Trial counsel asked, "Of the one other person you know who also knows Bill, what is his reputation for being a law-abiding person?" Mr. Lockard responded, "Bill is above reproach." N.T. 6/2/2011 pp. 211-212. It wasn't until cross-examination that personal opinion testimony was elicited. Commonwealth's attorney asked, "Sir, what can you think of that would change that reputation, if anything?" Id. at 212. Trial counsel objected as it called for Mr. Lockard's opinion. The Trial Court overruled trial counsel's objection, and allowed Mr. Lockard to answer. Trial counsel would object once more, but the Trial Court again overruled trial counsel's objection. The record clearly supports a finding that trial counsel did not elicit the improper testimony from Mr. Lockard.

Therefore, we rejected Kuder's claim that trial counsel was ineffective, as his claim is without merit. Trial counsel, known to all members of this Court to be a well prepared, highly experienced and effective advocate, conducted a text book direct examination of twenty-three (23) character witnesses. In these two instances, through no fault of trial counsel, the witnesses unexpectedly veered into opinion evidence, and given that the supposedly prejudicial cross examination of the witnesses involved mention of the content of Kuder's confession, which had already been properly introduced into the record anyway, this Court agrees with the Superior Court's prior determination on Kuder's direct appeal that any such error was harmless and Kuder suffered no prejudice as a result.

16

V.    Petitioner's Constitutional Rights under the First, Fourth, Sixth and Fourteenth Amendments to the U.S. Constitution and Article 1 §9 were not violated as Petitioner's Counsel was not Ineffective and no Prejudicial Effect Existed.

Kuder's final claim is that he is entitled to relief based on the cumulative prejudice of prior counsel's ineffective assistance. However, we rejected Kuder's claim, as Kuder did not meet his burden of proving ineffectiveness in any of his above claims.

Kuder incorrectly attempts to shift the burden of proof and argues the incorrect standard of review. Kuder states, "the Commonwealth cannot meet its burden of proving that the combined errors are harmless." Amended PCRA Petition, p. 44. The Commonwealth is not required to prove harmlessness. See Commonwealth v. Gribble, 863 A.2d 455 (Pa. 2004). Rather, it is Kuder's burden to prove he was prejudiced. As set forth above, this Court rejects and does not find that Kuder was prejudiced in any of his PCRA claims.

It is well established that Pennsylvania courts have, "repeatedly held that no number of failed ineffectiveness claims may collectively warrant relief if they fail to do so individually. Thus, to the extent claims are rejected for lack of arguable merit, there is no basis for an accumulation claim." Commonwealth v. Hanible, 30 A.3d 426, 483 (Pa. 2011). Kuder's ineffectiveness claims in connection with the Wiretap Act and character witnesses all fail due to lack of merit. Therefore, any claim of cumulative prejudice must also fail on its face. See Commonwealth v. Busanet, 54 A.3d 35 (Pa. 2012) (holding claims that did not prejudice the appellant individually, did not prejudice him when considered in the aggregate).

This Court also found that Kuder's claims failed due to the lack of prejudice. In order to find cumulative prejudice there must be multiple instances of deficient performance. Commonwealth v. Johnson, 966 A.2d 523 (Pa. 2009). The Superior Court previously held that any prejudice found in connection with character witnesses Mr. Black and Mr. Lockard was *de*

17

*minimus* at best. Commonwealth v. Kuder, 62 A.3d 1038 (Pa. Super. 2013). Therefore, this Court found that any prejudice fell drastically short of the standard to grant a new trial or relief. Similarly, the overwhelming evidence of Kuder's guilt, as found by the Superior Court, also defeats any claim of cumulative error.

## CONCLUSION

This Court respectfully submits that a review of the record in this matter confirms that Mr. Kuder was convicted by a jury of his peers following a three day trial in which he received highly effective representation from an experienced and well respected trial advocate. His confession was properly obtained by the Commonwealth and properly admitted into evidence by the Trial Court. His attempts to explain away his confession and the other evidence were understandably rejected by the jury. He was then represented on direct appeal by an experienced appellate advocate who raised those issues which were reasonably thought to have the best chance of success. Mr. Kuder's conviction has been properly affirmed by the Superior Court and was declined to be reviewed by the Supreme Court. Mr. Kuder has had his day in Court and then some. With all due respect, the PCRA Petition and the arguments raised in this appeal, rest, for the most part, on this Court being asked to ignore the plain language of the relevant statutes and to ignore clear binding precedent. Accordingly, this Court submits that Mr. Kuder's PCRA Petition was properly dismissed and respectfully requests that this appeal be dismissed. Mr. Kuder should be required to continue to serve the proper and appropriate Sentence imposed by the Trial Court.

BY THE COURT:

DATE: 3/24/17

_____
BRIAN T. McGUFFIN, J.

18